UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION -- LEXINGTON

GOLDEN GATE NATIONAL SENIOR CARE, LLC;
GGNSC STANFORD, LLC, d/b/a GOLDEN
LIVINGCENTER – STANFORD;
GGNSC ADMINISTRATIVE SERVICES, LLC;
GGNSC HOLDINGS, LLC;
GGNSC EQUITY HOLDINGS, LLC;
GGNSC EQUITY HOLDINGS II, LLC;
GOLDEN GATE ANCILLARY, LLC;
GGNSC CLINICAL SERVICES, LLC; and
GPH STANFORD, LLC,

    Plaintiffs,

V.

BRENDA SLAVEN and
ELAINE CARTER, co-administratrixes of the
estate of Sarah Stambaugh, Deceased

    Defendant.

CIVIL ACTION NO. 5:17-161-KKC

OPINION AND ORDER

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the motion to dismiss (DE 11) filed by the estate of Sarah Stambaugh. With the motion, the estate asks the Court to dismiss the plaintiffs' complaint, which seeks to compel the estate to arbitrate claims it filed in state court. For the following reasons, the motion will be denied.

I. Background

Sarah Stambaugh was a resident of Golden Living Center, a long-term care facility in Stanford, Kentucky, from March 29, 2016 to February 4, 2017. On March 13, 2017, she filed an action in Lincoln Circuit Court against Golden Living, various affiliated companies, and two individuals who are administrators of the facility. In that state court action, she asserted claims of negligence and violation of her rights as a resident of a long-term care facility.

On March 31, 2017, Golden Living and the affiliated companies (together, "Golden Living") filed this action in federal court asking for an order compelling Stambaugh to arbitrate the claims she had asserted in Lincoln Circuit Court. On April 7, 2017, Stambaugh's counsel filed a "Notice of Death" with this Court stating that Stambaugh died on March 19, 2017. The notice further stated that "estate proceedings will begin shortly, and a motion to substitute and revive the action will be filed when appropriate."

About four months after filing the Notice of Death, on August 3, 3017, Stambaugh's counsel moved to substitute Stambaugh's estate as the plaintiff in the state court action. A few days later, on August 8, 2017, Golden Living amended its petition in this Court to name the estate as the defendant instead of Stambaugh. The estate now argues this action should be dismissed for several reasons.

**II. Analysis**

The Court will first address, as it must, the estate's argument that this Court does not have subject matter jurisdiction over this action. Golden Living asserts that this Court has jurisdiction over this matter under 28 U.S.C. § 1332. That statute provides that district courts shall have original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states. 28 U.S.C.A. § 1332(a)(1).

There is no dispute that the estate is a Kentucky citizen and none of the plaintiffs is. The estate argues, however, that the question is not whether diversity jurisdiction exists in the action filed in this Court. Citing *Vaden v. Discover Bank*, 556 U.S. 49 (2009), the estate argues that, in determining whether subject matter jurisdiction exists in this action, the Court should consider whether diversity jurisdiction exists in the underlying state-court action. (DE 11-1, Mem. at 4.)

This Court, however, continues to agree with the Eighth Circuit's determination in *Northport Health Servs. of Arkansas, LLC v. Rutherford*, 605 F.3d 483 (8th Cir. 2010) that in *Vaden*, the Supreme Court "carefully limited its statement of the issues and holding to federal question jurisdiction." *Northport*, 605 F.3d at 490. *See Brookdale Senior Living Inc. v. Stacy*, 27 F. Supp. 3d 776 (E.D. Ky. 2014). The Eighth Circuit instructed that "diversity of citizenship is determined in these cases by the citizenship of the parties named in the proceedings before the district court, plus any indispensable parties who must be joined pursuant to Rule 19." *Id.* at 491. Accordingly, in determining whether diversity jurisdiction exists in this case, the Court will look to the parties named in the complaint and any indispensable parties under Rule 19.

That leads to the estate's next argument: that the two individual administrators named in the state court action are indispensable to this action under Rule 19(b). There is no dispute that the administrators are Kentucky citizens and, thus, their joinder would destroy this Court's diversity jurisdiction.

"Rule 19 of the Federal Rules of Civil Procedure establishes a three-step analysis for determining whether a case should proceed in the absence of a particular party." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 200 (6th Cir. 2001). The first step is to determine whether a party not joined is necessary under Rule 19(a). *Id.* Second, if the party is necessary, the court must next determine whether joinder is feasible, considering whether the party is subject to personal jurisdiction and if joinder will destroy the court's subject-matter jurisdiction. *Id.* Third, if joinder will destroy subject-matter jurisdiction – for instance, through joinder of a non-diverse party – the court must examine "whether in equity and good conscience the action should proceed" without the nonjoined party, *i.e.*, whether the party is "indispensable." *Id.* If an indispensable party cannot be feasibly joined,

3

the action must be dismissed. However, if the party is not indispensable, the action may proceed in that party's absence. *See GGNSC Vanceburg, LLC, v. Hanley*, Civil Action No. 13–106–HRW, 2014 WL 1333204, at *3 (E.D.Ky. Mar.28, 2014).

For purposes of this opinion, the Court will assume that the administrators are necessary parties. Turning to step two – feasibility of joinder – joining them in this action will destroy this Court's diversity jurisdiction. Thus, this Court must determine whether they are indispensable, meaning that the action should be dismissed rather than proceed without them. Rule 19(b) provides four factors to consider when determining whether a non-joined party is indispensable:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
> (A) protective provisions in the judgment;
> (B) shaping the relief; or
> (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

The estate argues that the administrators are indispensable in this action because the claims against them in state court are also subject to the arbitration agreement. (DE 11-1, Mem. at 19-20.) It also argues that, under Kentucky law, it has asserted at least a "colorable" claim against the administrators (DE 11-1, Mem. at 5) and that the administrators have at least "potential liability" under Kentucky law. (DE 11-1, Mem. at 6; 7-11.) The estate does not, however, explain how the administrators would be prejudiced if they are not joined in this action or how a judgment rendered in their absence would not be

4

adequate. Thus, the Court cannot find that the administrators are indispensable to this action.

The estate argues that, even if this Court does have jurisdiction over this action, it should abstain from exercising it under the *Colorado River* doctrine. "In certain 'exceptional' circumstances, [ ] a federal district court may abstain from exercising its subject matter jurisdiction due to the existence of a concurrent state court proceeding, based on 'considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *PaineWebber*, 276 F.3d at 206 (quoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976)). But "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," and this "extraordinary and narrow exception" is only justified when it "would clearly serve an important countervailing interest." *Colorado River*, 424 U.S. at 813.

The first issue is whether there is, in fact, a parallel state court proceeding. While for purposes of *Colorado River* abstention, the state and federal proceedings need only be "substantially similar," *Romine v. Compuserve Corp.*, 160 F.3d 337, 340 (6th Cir. 1998), the two actions cannot be said to be parallel if the claims presented in this Court are not presented in the state court action at all. The estate argues that the state-court and federal actions are parallel because the parties are almost identical and both require the court to determine whether the arbitration agreement is valid. Golden Living, however, states that neither it nor any other party in the state court action has asked the state court to determine the validity of the arbitration agreement. Nothing in the record before this Court indicates that any of the parties to this action have requested the state court to make any determinations regarding the arbitration agreement or the arbitrability of the estate's

5

state-law claims. Accordingly, the Court cannot find that this action and the state-court action are parallel.

Furthermore, even if the state court had been asked to determine the validity of the arbitration agreement and whether the estate's claims should be arbitrated, the Court could not find abstention warranted. "[T]he decision to dismiss a federal action because of a parallel state-court action rests 'on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.' " *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 886 (6th Cir.2002) (quoting M*oses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16 (1983)).

Courts consider eight factors when determining whether abstention under *Colorado River* is necessary. *PaineWebber*, 276 F.3d at 206 (citing *Romine*, 160 F.3d at 340–41. These factors are::

> (1) whether the state court has assumed jurisdiction over any res or property;
> (2) whether the federal forum is less convenient to the parties;
> (3) avoidance of piecemeal litigation; . . .
> (4) the order in which jurisdiction was obtained[;] . . .
> (5) whether the source of governing law is state or federal;
> (6) the adequacy of the state court action to protect the federal plaintiff's rights;
> (7) the relative progress of the state and federal proceedings; and
> (8) the presence or absence of concurrent jurisdiction.

*Id.* (citing *Romine*, 160 F.3d at 340–41).

The first two factors favor this Court exercising jurisdiction in this action. There is no res and neither forum is any more convenient than the other. *See PaineWebber*, 276 F.3d at 207. As to the fourth and seventh factors, they again favor the exercise of federal jurisdiction. The state court action was filed before this but there is no evidence in this record that it has substantially advanced or that the state court has addressed the

arbitration issue at all. "[T]he relative progress of the proceedings is at least as important as the order of filing." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 887 (6th Cir. 2002).

The "most important" factor is the third factor, which asks "whether there is a 'clear federal policy evinc[ing]. . . the avoidance of piecemeal adjudication' found within the statutory scheme at issue." *Answers in Genesis of Kentucky, Inc. v. Creation Ministries Int'l., Ltd.*, 556 F.3d 459, 467 (6th Cir.2009). The Sixth Circuit Court of Appeals has held that "[i]n the case of the Federal Arbitration Act, there most clearly is not such a policy." *Id.* at 467. This is because the FAA "requires district courts to compel arbitration . . . when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Id.* at 467–68. Thus, the most important factor when determining whether to exercise this Court's jurisdiction weighs in favor of doing so.

The fifth and eight factors also weigh in favor of exercising jurisdiction. This Court has jurisdiction over the issue presented in the complaint and the "FAA provides the source of law for interpreting the arbitration clause [.]" *PaineWebber*, 276 F.3d at 208. While the Court recognizes that the state court is an adequate venue to resolve the question of whether the estate's state-court claims must be arbitrated, considering all of these factors, the Court will not abstain from exercising its jurisdiction over this action.

Next, the estate argues that this action must be dismissed because Golden Living failed to file a motion to substitute the estate for Stambaugh within 90 days of receiving notice of Stambaugh's death in violation of Federal Rule of Civil Procedure 25(a)(1). That rule provides that, if a motion to substitute a party for a decedent is not made "within 90 days

7

after service of a statement noting the death, the action by or against the decedent must be dismissed."

This argument fails for two reasons. First, this is no longer an action "against the decedent." On August 8, 2017, Golden Living filed an amended complaint naming the estate as the defendant instead of the decedent pursuant to Rule 15(a)(1)(B).

Second, two steps are required for the 90-day period under Rule 25(a)(1) to commence. First, the suggestion of death must be made upon the record. *Barlow v. Ground*, 39 F.3d 231, 233 (9th Cir.1994); *Grandbouche v. Lovell*, 913 F.2d 835, 836-37 (10th Cir.1990). Second, the suggestion of death must be served upon the other parties and the deceased's successor. *Barlow*, 39 F.3d at 233; *Grandbouche*, 913 F.2d at 836-37; *Fariss v. Lynchburg Foundry*, 769 F.2d 958, 961-62 (4th Cir.1985). If the deceased's successor is a non-party, then the suggestion of death must be served in accordance with Rule 4. Fed. R. Civ. P. 25(a)(3); *Barlow,* 39 F.3d at 233-34; *Grandbouche*, 913 F.2d at 837; *Fariss*, 769 F.2d at 962. There is no indication in the record that the notice of death was served on the co-administratrixes of the estate. Further, the notice contained no other indication regarding the identity of the deceased's successor. Accordingly, the 90-day clock for Golden Living to move to substitute the decedent's successor has not been triggered.

Next, the estate moves to dismiss the complaint under Rule 12(b)(6), arguing that the agreement does not evidence a transaction involving interstate commerce as required under the FAA, which provides in relevant part that "a written provision in any . . .contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract. . . shall be valid, irrevocable, and enforceable. . . ." 9 U.S.C. § 2. The statute further defines "commerce" to include "commerce among the several States." 9 U.S.C. § 1. The phrase "involving commerce" has been interpreted as "the

8

functional equivalent of the more familiar term 'affecting commerce' – words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U .S. 52, 56 (2003) (citation omitted).

Federal courts in this district have consistently determined that agreements to arbitrate disputes involving the provision of long-term health care evidence a transaction involving interstate commerce. *See e.g., GGNSC Frankfort, LLC v. Tracy*, No. CIV. 14-30-GFVT, 2015 WL 1481149, at *11 (E.D. Ky. Mar. 31, 2015) (stating "a nursing home's acceptance of Medicare or Medicaid has consistently been found sufficient to establish an arbitration agreement's ties to interstate commerce"); *Richmond Health Facilities-Kenwood, LP v. Nichols*, No. *CIV.A.* 5:14-141-DCR, 2014 WL 4063823, at *8 (E.D. Ky. Aug. 13, 2014); *Golden Gate Nat. Senior Care, LLC v. Addington*, No. 14-CV-327-JMH, 2015 WL 1526135, at *8 (E.D. Ky. Apr. 3, 2015). ("Interstate commerce is interpreted broadly and healthcare is an economic activity that represents a general practice subject to federal control."); *GGNSC Louisville Hillcreek, LLC v. Warner*, No. 3:13-CV-752-H, 2013 WL 6796421, at *8 (W.D. Ky. Dec. 19, 2013) ("The food, medicine, and durable medical supplies that Hillcreek provided must come from somewhere . . . the Court takes judicial notice that it is impracticable for Hillcreek to procure all goods necessary for the daily operation purely through intrastate channels.")

Because the arbitration agreement evidences a transaction involving interstate commerce – the provision of healthcare – it is governed by the FAA.

Finally, the estate argues that the complaint must be dismissed because the arbitration agreement is unconscionable. The doctrine of unconscionability is a narrow exception to the general rule that "absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its

terms." *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky.Ct.App.2001). An unconscionable contract is "one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." *Id.* at 342 (quoting *Louisville Bear Safety Serv., Inc. v. S. Cent. Bell Tel. Co.*, 571 S.W.2d 438, 439 (Ky. Ct. App. 1978)).

There are two forms of unconscionability. Procedural unconscionability "pertains to the process by which an agreement is reached." *Id.* at 341, n. 22. Such complaints might relate to the size of the print, unclear language, and concerns raised regarding contracts of adhesion. *Id.* Substantive unconscionability 'refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent.'" *Id.* (citing *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir.1999)).

The estate argues that the arbitration agreement here is unconscionable because it is "part of a mass-produced, boiler-plate, pre-printed document, likely presented" to Stambaugh within a "lengthy stack of admissions paperwork" and because there is a "gross disparity of bargaining power" between the two parties to the agreement, one being a sophisticated healthcare services conglomerate and the other a family or resident "facing the emotional and difficult task of seeking necessary care for a loved-one from an unknown third party."

In *Conseco*, the Kentucky Court of Appeals determined that an arbitration provision within an agreement was procedurally sound because "[t]he clause was not concealed or disguised within the form; its provisions are clearly stated such that purchasers of ordinary experience and education are likely to be able to understand it, at least in its general import; and its effect is not such as to alter the principal bargain in an extreme or

surprising way." 47 S.W.3d at 343. Further, the individuals objecting to the enforceability of the agreement did not deny that they were able to read it. *Id.*

Here, the agreement to arbitrate is not contained in a clause buried within a long document. It is contained in a separate document titled in bold with and all capital letters, "ALTERNATIVE DISPUTE RESOLUTION AGREEMENT." The agreement instructs in bold just beneath the title, "THIS AGREEMENT IS <u>NOT</u> A CONDITION OF ADMISSION TO OR CONTINUED RESIDENCE IN THE FACILITY." The agreement further states in bold:

> THE PARTIES UNDERSTAND, ACKNOWLEDGE, AND AGREE THAT THEY ARE SELECTING A METHOD OF RESOLVING DISPUTES WITHOUT RESORTING TO LAWSUITS OR THE COURTS, AND THAT BY ENTERING INTO THIS AGREEMENT, THEY ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO HAVE THEIR DISPUTES DECIDED IN A COURT OF LAW BY A JUDGE OR JURY, THE OPPORTUNITY TO PRESENT THEIR CLAIMS AS A CLASS ACTION AND/OR TO APPEAL ANY DECISION OR AWARD OF DAMAGES RESULTING FROM THE ADR PROCESS EXCEPT AS PROVIDED HEREIN.

The language of the agreement is clear and purchasers of ordinary experience and education should understand its general import. The estate does not assert that Stambaugh was unable to read it. Further, the agreement advises the resident that she has the right to seek legal advice regarding the agreement and that she can revoke the agreement by sending notice to the facility within 30 days of signing it.

The estate makes a cursory argument that the agreement is unconscionable because it incorporates JAMS procedural rules but does not attach them. Nevertheless, "the incorporation is clear and unambiguous, and the JAMS rules and statutes are readily available to the public." *Clements v. DIRECTV, LLC*, No. 4:13-CV-4048, 2014 WL 1266834, at *5 (W.D. Ark. Mar. 26, 2014).

The estate also complains that arbitration truncates discovery. But even if the discovery permitted under arbitration is not "as extensive as in the federal courts, by agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (U.S. 1991) (internal quotations and citation omitted).

Accordingly, this Court has no grounds to find the arbitration agreement unconscionable.

### III. Conclusion

For all these reasons, the Court hereby ORDERS that the estate's motion to dismiss (DE 11) is denied.

Dated March 26, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY